UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Alex Jerome and Ameena Samatar,

       Plaintiffs,

                             No. 14-cv-104 (JNE/JSM)

v.                              ORDER

City of St. Paul,

       Defendant.

---

This is a civil rights action brought by Alex Jerome and Ameena Samatar, a married couple, against the City of St. Paul, Minnesota.  Jerome and Samatar, naturalized citizens who immigrated to the United States from Somalia, allege that St. Paul officials discriminated against them on the basis of their race, national origin, and religion in a nuisance abatement proceeding targeting a vacant, out-of-code building they purchased in the summer of 2012.

The case is now before the Court on St. Paul's Motion to Dismiss.  As discussed below, Jerome and Samatar are precluded from relitigating most of the factual allegations they make in support their discrimination claims here by an adverse decision of the Minnesota Court of Appeals in a concurrent state proceeding, and the remaining factual content in their Complaint is insufficient to state a claim on which relief may be granted.  The city's motion will therefore be granted.

## Background[1]

The case revolves around a building at 601 Western Avenue North in St. Paul.  The building is well over 100 years old and housed a bar for many years before the city revoked the previous owner's liquor license in August of 2010.  The building's Certificate of Occupancy was revoked the following March.

In May of 2012, the Vacant/Nuisance Buildings Unit of the city's Department of Safety and Inspections issued a Building Deficiency Inspection Report, documenting a number of code violations in the building.  Among the deficiencies noted were a "deteriorated" foundation and roof, "defective" walls and ceilings, rodent infestation, mold, open plumbing, and loose electrical wiring.

On that basis, on June 1, 2012, the Vacant Buildings Enforcement Inspector declared the building "to comprise a nuisance condition in violation of the Saint Paul Legislative Code, Chapter 45.02, and subject to demolition under authority of Chapter 45.11."  The Inspector notified the owners that if the "deficiencies and the resulting nuisance condition is not corrected by July 1, 2012 the Department of Safety and Inspections, Division of Code Enforcement, will begin a substantial abatement process to demolish and remove the building(s)."

The code violations were not corrected within the allotted time period, and so the city initiated an abatement proceeding as it had indicated.  As that process was getting underway, Jerome and Samatar purchased the building from its previous owners.  Jerome and Samatar then

---

[1] "When ruling on a motion to dismiss under Rule[] 12(b)(6) . . . , a district court generally may not consider materials outside the pleadings," though it may "consider some public records, materials that do not contradict the complaint, or materials that are "necessarily embraced by the pleadings." *Noble Systems Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).  Accordingly, the background information that follows is drawn from Jerome and Samatar's Complaint, the record of the abatement proceeding that is embraced by that pleading, and other matters of public record.

participated in a series of hearings on the building's condition before a Legislative Hearing

Officer and the City Council between August and December of 2012.

At the conclusion of that process, the City Council unanimously passed Resolution 12-68

on December 19, 2012.  With that resolution, the city determined that the building

> is a nuisance building pursuant to Saint Paul Legislative Code § 45.02, as 1) it is a
> vacant building as defined in § 43.02; and 2) it has multiple housing code or
> building code violations or it has conditions constituting material endangerment
> as defined in § 34.23, or it has a documented and confirmed history as a blighting
> influence in the community; and 3) these nuisance conditions have not been
> corrected after notice of the same to the owner[.]

The city also found that "the owners, interested parties or responsible parties have not presented

a plan acceptable to the legislative hearing officer and Department of Public Safety and

Inspections staff to repair he structure(s) and correct all of the deficiencies . . . and to make the

structure(s) safe and code compliant[.]"  Therefore, the city "order[ed] that the owners, interested

parties or responsible parties shall repair the structure, correct all of the deficiencies

. . . and . . . make the structure(s) safe and code compliant, or shall raze and remove the

structure(s) within thirty (30) days[.]"  Further, if the owners failed to take such corrective

action, the resolution authorized the Department of Safety and Inspections "to take those steps

necessary to raze and remove this structure and to charge the costs incurred in accordance with

Saint Paul Legislative Code § 45.12(4)."

In February of 2013, Jerome and Samatar challenged this resolution in the Minnesota

Court of Appeals on a petition for a writ of certiorari.  In addition to arguing that the resolution

should be vacated because it was arbitrary and capricious and not based on substantial evidence,

Jerome and Samatar also asserted that the city had discriminated against them on account of their

race and national origin and denied them due process of law.

In January of 2014, while that certiorari review was pending in the Minnesota Court of Appeals, Jerome and Samatar filed this action, alleging that the city discriminated against them in the abatement proceeding because of their race, national origin, and religion.  In their Complaint, Jerome and Samatar bring four counts under 42 U.S.C.§ 1983 asserting violations of their federal statutory and constitutional rights, as well as one count under the Minnesota Human Rights Act.

The city moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim on which relief may be granted.  Since that motion was filed, the Minnesota Court of Appeals issued its decision, rejecting all of Jerome and Samatar's arguments about the alleged improprieties in the abatement proceeding and affirming Resolution 12-68. *Jerome v. City of St. Paul*, No. A13-0313, 2014 WL 1660629 (Minn. Ct. App. Apr. 28, 2014). Jerome and Samatar thereafter sought further review in the Minnesota Supreme Court, but their petition was denied on July 15, 2014.  In light of those developments, the Court requested and the parties supplied supplemental briefing on the application of the doctrine of res judicata in these circumstances.

## Discussion

The Court first addresses the preclusive effect of the state proceedings regarding Resolution 12-68, and then turns to the city's Motion to Dismiss under Rule 12(b)(6).

### I.      Res judicata.

In circumstances like these involving concurrent state and federal litigation, "federal jurisdiction over [the] action does not terminate automatically on the entry of judgment in the

state court." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292-93 (2005). Rather, "[d]isposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law." *Id.*

"[T]he Full Faith and Credit Act, 28 U.S.C. § 1738, . . . requires the federal court to 'give the same preclusive effect to [the] state-court judgment as another court of that State would give.'" *Id.* "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Both species of preclusion are founded on the principle "that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies." *Hauschildt v. Beckingham,* 686 N.W.2d 829, 837 (Minn. 2004) (internal quotation, punctuation, and citations omitted).

### A. Claim preclusion.

"Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 74, 748 (2001)). Claim preclusion thus "not only applies to all claims actually litigated, but to all claims that could have been litigated in the earlier action." *Zutz v. Nelson*, 601 F.3d 842, 847 (8th Cir. 2010) (quoting *Hauschildt*, 686 N.W.2d at 840). *See also State v. Joseph*, 636 N.W.2d 322, 327 (Minn. 2001) (noting that in Minnesota, claim preclusion "operates as an absolute bar to a subsequent claim when: (1) the earlier claim involved the same claim for relief; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on

the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter")
(footnote and citations removed).

Jerome and Samatar argue, in part, that claim preclusion does not bar them from litigating
this case because they could not have brought the federal and state causes of action they bring
here in the state proceedings.  In these circumstances, the Court agrees.

The city initiated the state proceedings as a nuisance abatement action under Chapter 45
of the Saint Paul Legislative Code.  That abatement proceeding, and the repair-or-raze resolution
passed by the City Council at its conclusion, were quasi-judicial in nature.  *Khan v. Minneapolis
City Council*, 792 N.W.2d 463, 465-66 (Minn. Ct. App. 2010).  Under state law, Jerome and
Samatar could only have sought reversal or vacation and remand of the City Council's resolution
on a petition for a writ of certiorari in the Minnesota Court of Appeals.  *Id.*; *City of Minneapolis
v. Meldahl*, 607 N.W.2d 168, 171 (Minn. Ct. App. 2000) ("Unless there is statutory authority for
a different proceeding, a party may obtain review of a quasi-judicial decision by an executive
body that does not have statewide jurisdiction only by writ of certiorari."); *Tessmer v. City of
Saint Paul*, No. A07-2349, 2008 WL 5215938, *3-4 (Minn. Ct. App. Dec. 16, 2008)
(determining that Chapter 45 of the Saint Paul Legislative Code applies to nuisance abatement
proceedings and that it "does not provide statutory authority for an appellate proceeding, thereby
requiring that any appeal be taken by a writ of certiorari").

On certiorari, the Minnesota Court of Appeals' review of the matter was "confined to the
record before the city council at the time it made its decision" and was limited "to questions
affecting the jurisdiction of the [city council to take the action it took], the regularity of its
proceedings, and, as to [the] merits of the controversy, whether the order or determination in a
particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of

law, or without any evidence to support it." *Khan*, 792 N.W.2d at 466 (quotations and citations

omitted).  Accordingly, the Minnesota Court of Appeals sitting in certiorari had no authority to

award the money damages or issue the injunctions that Jerome and Samatar seek here.

Relevant, then, is a long-recognized "exception" to the application of claim preclusion

where

> [t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief[.]

Restatement (Second) of Judgments § 26(1)(c) (1980).  *See also U.S. v. Tohono O'Odham*

*Nation*, 131 S. Ct. 1723, 1738-39 (2011) (Sotomayor, J., concurring) (observing that the

"exception to [claim preclusion] when a plaintiff was unable to obtain a certain remedy in the

earlier action" embodied in § 26(1)(c) of the Restatement (Second) of Judgments "has long

informed claim preclusion law").  "The general rule" of claim preclusion yields in these

circumstances because it

> is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law.  When such formal barriers in fact existed and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.

Restatement (Second) of Judgments § 26(1)(c), cmt. c (1980).

The Court therefore concludes that claim preclusion does not bar Jerome and Samatar

from pursuing this action.

**B.  Issue preclusion.**

That, however, does not end the preclusion analysis.[2]  Though the forms of relief Jerome and Samatar seek in this action were unavailable to them in the state proceedings, they did litigate – unsuccessfully – the issues on which they base their claims to that relief.

Issue preclusion is thus implicated.  In contrast to claim preclusion, "[i]ssue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. at 748-49)).  This principle holds even where, as here, a party presses a claim for relief under federal civil rights statutes that is grounded in issues that were determined adversely to it in a prior state court proceeding.  *Migra v. Warren City School Dist. Bd. Of Educ.*, 465 U.S. 75, 81-83 (1984) (noting that it is "well-settled" that "issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered").  This is based, in part, on the federal courts' respect for "the constitutional obligation of the state courts to uphold federal law, and [an] expression of confidence in their ability to do so." *Allen v. McCurry*, 449 U.S. 90, 105 (1980) (citation omitted).

---

[2]    Even with the Court's request for supplemental briefing, the city made no argument regarding issue preclusion.  Nevertheless, in the interests of judicial economy and the orderly administration of justice, the Court will consider it.  *See Hanig v. City of Winner, S.D.*, 527 F.3d 674, 678 (8th Cir. 2008) (affirming judgment based on preclusion grounds that were raised sua sponte by district court where parties were given notice and opportunity to brief the issues); *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1068-69 (8th Cir. 1997) (affirming judgment on preclusion grounds not addressed in district court where record was sufficient to decide the issues).

The parties were put on notice at oral argument that the Court was considering the application of preclusion principles, and they were thereafter given the opportunity to brief their positions.  And indeed, despite the city's sole focus on claim preclusion, Jerome and Samatar did address both claim and issue preclusion in their supplemental briefing.

Under Minnesota law, issue preclusion "applies when (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." *Nelson v. American Family Ins. Group*, 651 N.W.2d 499, 511 (Minn. 2002) (quotation and citation omitted).

Jerome and Samatar do not contest that the first three elements are satisfied. The Minnesota state court case between Jerome and Samatar and the City of St. Paul involved the same parties to this action, arose out of the same set of factual circumstances around the abatement proceeding for the building at 601 Western Avenue North, and concluded with a final judgment on the merits.[3] It also included the litigation of the issues that underpin Jerome and Samatar's causes of action here, and the adjudication of those issues was essential to the state court's judgment. In particular, the Minnesota Court of Appeals carefully considered Jerome and Samatar's allegation "that the city discriminated against them on the basis of race or national origin" before finding it to be "without merit," and also rejected their assertion that the city's actions amounted to an unlawful taking. *Jerome*, 2014 WL 1660629, *9-11.

However, Jerome and Samatar argue that issue preclusion does not apply in this case because they were denied a full and fair opportunity to litigate those matters in the state

---

[3]   Under Minnesota law, "for res judicata purposes, a judgment becomes final when it is entered in the [issuing] court and it remains final, despite a pending appeal, until it is reversed, vacated or otherwise modified." *Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P.*, 732 N.W.2d 209, 221 (Minn. 2007).

The "final judgment on the merits" element of issue preclusion is therefore satisfied here, and Jerome and Samatar do not argue otherwise. Though it remains possible that they could seek review of the Minnesota Court of Appeals decision in the United States Supreme Court, *see* Sup. Ct. R. 13(1) ("A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."), that possibility need not delay this Court's decision in this action.

proceedings.  Under Minnesota preclusion law, "[t]he question of whether a party had a full and fair opportunity to litigate a matter generally focuses on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." *State v. Joseph*, 636 N.W.2d 322, 328 (Minn. 2001) (quotation and citation removed).  Jerome and Samatar do not deny that they had the incentive to fully litigate the issues – of course, the future of their building depended on them.  But they do argue that the limited scope of review and the unavailability of discovery before the Minnesota Court of Appeals amounted to "significant procedural limitations" on their ability to present the issues.

This is, however, an unpersuasive attempt to cast the Minnesota Court of Appeals' wholesale rejection of their allegations as the product of procedural inadequacies in the state proceeding.  It was not.  Instead, it was the product of Jerome and Samatar's failure to substantiate their allegations despite the opportunities afforded them to develop the record.

The proceeding began not in the Minnesota Court of Appeals, but with the Order to Abate Nuisance Building(s) issued by the city on June 1, 2012.  That order declared the building "to comprise a nuisance condition in violation of the Saint Paul Legislative Code, Chapter 45.02, and subject to demolition under authority of Chapter 45.11."  The latter provision sets forth the procedures to be followed in the case of a "substantial abatement," including: that the matter be set for a hearing before the City Council, St. Paul Leg. Code § 45.11(3); that written notice of the hearing be provided to the owner of the building and all interested parties, *id.* § 45.11(4); that the owner have "an opportunity to meet and informally discuss the matter" prior to the City Council meeting with a legislative hearing officer, who may thereafter submit a recommendation to the City Council, *id.* § 45.11(4a); and that the City Council hear from any party who wishes to be

heard before "adopt[ing] a resolution describing what abatement action, if any, the council deems appropriate," *id.* § 45.11(5).

Jerome and Samatar do not challenge the adequacy of these procedures in any way – and in any event, because the record demonstrates that they participated in a series of hearings before the Legislative Hearing Officer rather than merely the informal discussion the ordinance mandates, they were "given more procedural safe-guards than required under Chapter 45." *Tessmer*, 2008 WL 5215938, *4. Jerome and Samatar also do not argue that they were unable to take advantage of the opportunity these Chapter 45 procedures afforded them to develop the record in the abatement proceeding in a way that would have substantiated their allegations of discrimination. *See Grundtner v. University of Minnesota*, 730 N.W.2d 323, 334 (Minn. Ct. App. 2007) ("As a general rule, appellant bears the burden of providing an adequate record. . . . The record must be sufficient to show the alleged errors and all matters necessary for consideration of the questions presented.") (quotation and citations omitted).

At the next step in the proceeding, when Jerome and Samatar raised the issue of discrimination on certiorari, the Minnesota Court of Appeals reviewed the allegations on the record before it. *Jerome*, 2014 WL 1660629, *10. Had that record – for which Jerome and Samatar were responsible – contained any support for their allegations, the court could have reversed the City Council's resolution or remanded the case for further evidentiary development. *See Meldahl*, 607 N.W.2d at 173 ("If the record [on certiorari] is incomplete, this court may either determine that the agency failed to prove substantial evidence supporting its decision or remand for further findings. . . . The question of whether the record is in fact adequate is one that should be addressed in the certiorari appeal and does not affect jurisdiction."); *Tessmer v. City of Saint Paul*, No. A08-0300, 2009 WL 173869, *2 (Minn. Ct. App. Jan. 27, 2009) ("Appellant

argues that her equal protection claim must be heard in the district court because discovery will be necessary in order to develop the evidentiary basis for the claim. . . . A property owner must make the equal protection argument to the city in the first instance and utilize the city's abatement proceedings to make a record regarding patterns of demolition.  If the record on certiorari were sufficient to raise the claim but not to decide it, the matter can be remanded for further production of evidence. . . . [I]t was appellant's burden in the city's abatement proceedings to properly establish an equal protection claim.").  But the court did not, instead finding each of Jerome and Samatar's allegations to be affirmatively refuted by the record and therefore meritless.

That determination must be given the same issue preclusive effect here that another Minnesota state court would give it.  And Minnesota courts apply preclusion principles to matters like these that were previously litigated in quasi-judicial proceedings and were therefore reviewable only on certiorari.  *See, e.g., Albert v. Minneapolis Public Housing Authority*, No. A10-1549, 2011 WL 1938256, *2 (Minn. Ct. App. May 23, 2011) (affirming application of res judicata to claims arising from administrative agency's debt collection decision that was reviewable only on certiorari); *Stephens v. Bd. of Regents of the University of Minnesota*, No. C3-01-1772, 2002 WL 1315809, *2 (Minn. Ct. App. June 18, 2002) (affirming application of res judicata to claims arising from executive body's employment decision that was reviewable only on certiorari).

Jerome and Samatar's attempt to resist the application of issue preclusion by focusing on the standard of review and the unavailability of discovery in the Minnesota Court of Appeals attendant to that court's certiorari review is thus unavailing.  The procedures in Chapter 45 of the Saint Paul Legislative Code, complemented by Minnesota's scheme for certiorari review of

quasi-judicial decisions, provided them with a full and fair opportunity to litigate all of the allegations of discrimination that they pressed in the Minnesota Court of Appeals.  Despite that opportunity, that court found that "each of [Jerome and Samatar's] arguments is without merit." *Jerome*, 2014 WL 1660629, *11.

As discussed below, Jerome and Samatar's pleading in this action is based on and incorporates the same record of the abatement proceeding that was before the Minnesota Court of Appeals, and proceeds from the same allegations that that court found to be baseless.  Holding Jerome and Samatar to that determination and precluding them from relitigating those issues here works no injustice.

## II.     Failure to state a claim.

The city has brought a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  On such a motion, a court must accept the facts alleged in the complaint as true and grant all reasonable inferences in favor of the plaintiff.  *Mulvenon v. Greenwood*, 643 F.3d 653, 656 (8th Cir. 2011).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  But "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

With these considerations in mind, the Court now turns to the four claims Jerome and Samatar assert against the city under 42 U.S.C. § 1983 for violations of their federal statutory and constitutional rights, as well as the one claim they bring under the Minnesota Human Rights Act.

### A.  Federal causes of action.

With their four § 1983 claims,[4] Jerome and Samatar bring three counts against the city for allegedly violating their federal statutory rights, and one count under the Fourteenth Amendment.

### 1.  Federal statutory rights.

---

[4]     Jerome and Samatar have sued only the City of Saint Paul here.  The city argues that the four counts brought under § 1983 should be dismissed because the Complaint fails to allege any facts that, if proven true, would demonstrate that the alleged violations of Jerome and Samatar's statutory and constitutional rights were committed pursuant to an official custom, policy, or practice of the city.

It is true that a municipality may be held liable under § 1983 only for acts committed by its employees pursuant to an "official policy," rather than through an application of the doctrine of respondeat superior.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 477-80 (1986) (discussing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)).  However, it is equally

> plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy.

*Id.* at 480.
Jerome and Samatar's § 1983 claims against the city arise out of the abatement proceeding that culminated with the repair-or-raze resolution passed by the City Council. Therefore, in this respect, they are adequately pled.

In Count I, Jerome and Samatar assert that the city violated their rights under 42 U.S.C. §§ 1981 and 1982, which are enforceable through § 1983, by subjecting them to "disparate treatment[] on the basis of national origin, religion, and race" in the abatement proceeding.  They make substantively similar accusations under the same statutes in Count II on a disparate impact theory, and in Count IV under the Civil Rights Act of 1866.

Though Jerome and Samatar have pled them separately here, these three claims are, in the context of this Complaint, legally indistinguishable.  "Sections 1981 and 1982 protect citizens' rights to make and enforce contracts and purchase both personal and real property without any impairment due to private or public racial discrimination," *Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004), and "[t]he operative language of both [sections] is traceable to the [Civil Rights] Act of April 9, 1866," *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 410 U.S. 431, 439 (1973) (citing *Hurd v. Hodge*, 334 U.S. 24, 30-31 (1948)).

Furthermore, each of these claims has as an essential element that the defendant acted with "discriminatory intent" toward the plaintiff based on her "ancestry or ethnic characteristics."  *Elmahdi v. Marriott Hotel Services, Inc.*, 339 F.3d 645, 654 n.4 (8th Cir. 2003) (questioning, but not deciding, whether plaintiff's Muslim religious beliefs "fall within the ambit of 'ancestry or ethnic characteristics'" under § 1981); *Dirden v. Department of Housing and Urban Development*, 86 F.3d 112, 114 (8th Cir. 1996) ("To prevail on a claim under 42 U.S.C. § 1981 [and] 42 U.S.C. § 1982[,] a plaintiff must prove discriminatory intent.").  As an essential element, "discriminatory intent" requires more than a showing of "intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects

upon an identifiable group." *Spirit Lake Tribe of Indians ex rel. Committee of Understanding and Respect v. National Collegiate Athletic Ass'n*, 715 F.3d 1089, 1092 (8th Cir. 2013).

This is where Jerome and Samatar's claims fail. As they argue, their Complaint does contain detailed factual allegations regarding the city's handling of the nuisance abatement proceeding. However, the Complaint contains only conclusory assertions of discrimination that are insufficient to survive the city's Motion to Dismiss. Between the application of issue preclusion to the matters that Jerome and Samatar already litigated unsuccessfully in the state proceedings and the examination of the pleading that *Iqbal* and *Twombly* require, it is clear that there is no factual content in the Complaint that could give rise to a reasonable inference that the city, or any of its employees or elected officials, acted with discriminatory intent on the basis of Jerome and Samatar's race, national origin, or religion.

For instance, in support of their discrimination claims, Jerome and Samatar emphasize their allegation that

> Samatar was berated by the [Legislative Hearing Officer] when she appeared in traditional Somali attire identifying herself and her husband as a new owners of the property under review. 'It's a joke' may well be seen by the jury as expressing disfavor. This is especially true if one listens to the recording which does not appear to present a jovial joke about Minneapolis but rather a dismissive expression.

Here, Jerome and Samatar refer to a brief exchange that took place between Samatar and the Legislative Hearing Officer ("LHO") at the initial hearing regarding their building on August 14, 2012. Jerome and Samatar made the same accusation against the LHO on certiorari in the Minnesota Court of Appeals. That court addressed it as follows:

> [Jerome and Samatar's] discrimination claim is based primarily on their assertion that the city's LHO described [Jerome and Samatar]' plans for the rehabilitated building in a derogatory manner as a "joke." [Jerome and Samatar's] brief states, "When Samatar described several potential usages, each designed to serve the Somali Community, the LHO understood that she was appearing as a new owner

[and] described the situation as 'a joke.'"  At oral argument, [Jerome and Samatar's] counsel stated further that the LHO's remark was a reaction to meeting Samatar, who presented as a Muslim woman dressed in a hijab.

The comment at issue was made during the first legislative hearing.  The LHO was not previously aware that the property had been sold.  After Samatar came forward and said that she and her husband were the new owners of the building, the LHO engaged in some informal conversation with Samatar, including the following exchange:

> L.H.O.: Do you folks live in town here or—
>
> SAMATAR: We're living in Minneapolis actually.
>
> L.H.O.: In Minneapolis. Oh, all right. [Laughter.] It's a joke.

The audio-recording of the hearing reveals that the LHO used a sarcastic tone when saying, "Oh, all right."  The audio-recording also reveals that some persons who were present (but not the LHO or Samatar) briefly engaged in some mild laughter in response to the LHO's remark.  The LHO then said, "It's a joke," as if to explain to Samatar that her sarcastic remark was an inside joke among city employees.  Most importantly, for purposes of [Jerome and Samatar]' discrimination claim, the audio-recording does not give a listener the impression that the LHO was referring in any way to Samatar's race or national origin when she either made the joking remark or referred back to it.  Rather, the audio-recording gives the strong impression that the LHO's joking remark referred to [Jerome and Samatar]' residence in the city of Minneapolis rather than the city of St. Paul.  The LHO's remarks appear quite clearly to be an example of the rather common and innocuous practice of residents of the Twin Cities to comment on, and sometimes joke about, the lighthearted rivalry between two cities.

Furthermore, at the time of the LHO's remark, there had not yet been any discussion regarding the potential uses of the property.  The first time Samatar mentioned her ideas for potential uses of the property was later in that hearing, when she said that she and Jerome anticipated that the first floor would be used for a retail store of some kind and that the second floor would be used for either offices or a wedding hall.  The record indicates that, at a later date, [Jerome and Samatar] told the city that they planned to use the second floor of the property as a rental hall for weddings and events and the first floor as a restaurant on one side and a retail store on the other.  Contrary to [Jerome and Samatar]' appellate arguments, [Jerome and Samatar] never indicated to anyone associated with the city that they intended to use the property for a purpose specifically associated with the Somali community, at least as far as the record reveals.  At oral argument, [Jerome and Samatar]' counsel repeatedly stated that [Jerome and Samatar] had planned to use the property as a "Somali meeting hall."  But there is nothing in the record to support that assertion.  If [Jerome and Samatar] intended

for the building to serve the Somali community, it appears from the record that they never communicated that intention to the city in any way.

*Jerome*, 2014 WL 1660629, *10.

The Minnesota Court of Appeals' determination that Jerome and Samatar's allegation regarding this exchange is meritless precludes them from relitigating that issue here.  Even if it did not, the Court would reach the same conclusion under the Rule 12(b)(6) standard.  The audio recording of the hearing is embraced by the pleadings – in fact, Jerome and Samatar themselves submitted it to the Court for consideration – and from it no reasonable fact-finder could conclude that the LHO "berated" Samatar, or that the LHO's reaction upon learning that Samatar was a resident of Minneapolis was an expression of "disfavor" of Samatar's race, national origin, or religion.

That exchange aside, Jerome and Samatar also argue that the Complaint adequately supports their claims because it alleges that:

- [They] were required to meet impossible timelines of rehabbing the building within 30 days when they could not receive construction permits as permits for the building had been frozen until rezoning of an adjacent parking lot occurs, a process that takes 4 to 5 months.

- The repeated statements by the LHO alleging that documented monies are not sufficient or not properly documented do not appear to be objective.

- Demands by the LHO and City Council that only the most expensive bids should be considered, and implying that the building should be judged by a greater standard of excellence than required by the building code, can be seen as expressions of bias.

But Jerome and Samatar are precluded from relitigating these issues too by the decision of the Minnesota Court of Appeals, which found each of these allegations to be meritless.

With regard to Jerome and Samatar's assertion that they were "required to meet impossible timelines" for repairing the building despite the city having frozen the necessary permits, the Minnesota Court of Appeals reviewed the record and found that

> [c]ity staff refrained from issuing permits for the property because, as was explained to Jerome, the appropriate permits could not be issued until [Jerome and Samatar] decided how the property would be used.   The city did not arbitrarily deny permits to [Jerome and Samatar] to prevent them from rehabilitating the property.   The city simply required [them] to follow certain steps to ensure that time, money, and resources were not wasted.   The zoning issues remained unresolved because [Jerome and Samatar] never decided how the property would be used.

*Jerome*, 2014 WL 1660629, *9.

As for Jerome and Samatar's allegation regarding the LHO's statements about "the documented monies," the Minnesota Court of Appeals disagreed:

> Between September and November 2012, [Jerome and Samatar] repeatedly were informed that they needed to provide the city with three things: (1) contractor bids, (2) a work plan, (3) and a demonstration of available funds to complete the project.   [They] never satisfied those requirements.   Although [Jerome and Samatar] submitted some information, the documentation was deemed inadequate.   The city explained to [them] on multiple occasions why the documents they had provided were inadequate, and further explained specifically what [they] needed to provide in order to meet the city's requirements.   But [Jerome and Samatar] failed to cure the deficiencies, despite repeated extensions of time.

*Id.* at *7.

Finally, the Minnesota Court of Appeals rejected Jerome and Samatar's allegation that the city required them to repair the building to a higher standard than the building code required:

> [Jerome and Samatar] argue that the city relied on factors not intended by the ordinance because the LHO was concerned with the aesthetics of the rehabilitation project, a factor not addressed by city ordinance.
>
> [Their] argument is based on comments made by the LHO at the first legislative hearing, on August 14, 2012:

> I would love to see this building fixed. There's a lot of things that could be
> done to make it look horrible, and there's some things that can be done to
> make it look great.... So if it can be a handsome part of that neighborhood
> ... you know, and a reputable business, great.

This comment is not connected to the city council's decision four months later to
order the building repaired or removed.   [Jerome and Samatar] never were
"legally obligated to restore the building to please the LHO's sense of aesthetics,"
as they argue in their brief.   Indeed, at the same legislative hearing, the LHO
clarified that [Jerome and Samatar] needed to provide the city with only three
things: (1) contractor bids, (2) a work plan, (3) and a demonstration of available
funds to complete the project.   The city never referred to aesthetics in any of the
requirements imposed on [Jerome and Samatar].

Thus, the city did not rely on factors not intended by the ordinance.

*Id.* at *8.

The only allegation that Jerome and Samatar make in this case in support of their

discrimination claims that appears not to have been presented to the Minnesota Court of Appeals

is their assertion that city officials' "[r]epeated inquiries concerning alcohol can be seen as being

intolerant of Plaintiffs' religious beliefs against alcohol usage."  Though not precluded, this

allegation is implausible on its face under the *Iqbal* and *Twombly* standard.

With this allegation, Jerome and Samatar take issue with being questioned by city

officials regarding whether they intended to put the building to a use that would involve the sale

or consumption of alcohol on the premises.  But Jerome and Samatar – by their own admission –

had suggested to the city during the abatement proceeding that they were considering using the

space for a retail store and/or a wedding and event hall, and it is a matter of public record that the

building had previously been a bar with a history of alcohol-related incidents that led to the

revocation of the owner's liquor license just two years prior.  There are no additional facts in the

Complaint that could create a reasonable inference that the officials' questions about alcohol

usage at the site had anything to do with Jerome and Samatar's race, national origin, or religion.

Furthermore, other than identifying Jerome and Samatar as Muslim, the Complaint contains no allegations at all regarding their religious beliefs.  Whatever the contours of those beliefs may be with regard to alcohol, the Complaint also fails to explain how the city officials would have been aware of them, such that the questioning could plausibly be seen as intolerant. It is not reasonable to infer from the facts Jerome and Samatar pled that the questions they faced regarding the sale of alcohol in the building had anything at all to do with their religion.

In sum, then, none of Jerome and Samatar's claims pled under § 1981, § 1982, and the Civil Rights Act of 1866 survive the city's Rule 12(b)(6) motion.

### 2.  Fourteenth Amendment.

In Count III of their Complaint, Jerome and Samatar assert that the city in the abatement proceeding denied them "due process of law in violation of the 14th Amendment to the United States Constitution enforceable through 42 U.S.C. § 1983."

"In general, procedural due process requires that a hearing before an impartial decision maker be provided at a meaningful time, and in a meaningful manner, prior to a governmental decision which deprives individuals of a liberty or property interest."  *Samuels v. Meriwether*, 94 F.3d 1163, 1166 (8th Cir. 1996) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976)).  In the context of a nuisance abatement, the Eighth Circuit has held that "where a property owner is given written notice to abate a hazard on his or her property and has been given an opportunity to appear before the proper municipal body considering condemnation of the property, no due process violation occurs when the municipality abates the nuisance pursuant to the condemnation notice."  *Id.* at 1166-67 (citing *Hagen v. Traill County*, 708 F.2d 347, 348 (8th Cir. 1983)).

21

In their briefing, Jerome and Samatar do not argue that the city failed to provide them with notice of the abatement or that it prevented them in any way from participating in the series of hearings before both the LHO and the City Council that are detailed in the Complaint. Instead, Jerome and Samatar suggest that those hearings were not "meaningful" because they were not held before an "impartial decision maker." They rest that contention on the same factual allegations whose inadequacies are discussed above. That analysis is equally applicable here: just as there is no factual content in the Complaint that is susceptible to a reasonable inference that the city acted with discriminatory intent in the abatement proceeding, there is also no basis on which a reasonable inference could be made that the city's decision makers were biased against Jerome and Samatar. This claim does not survive.

### B.  State cause of action.

In Count V of their Complaint, Jerome and Samatar assert that the city intentionally discriminated against them on the basis of national origin and religion in violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 *et seq.*

Under the MHRA,  "[a] claim of an unfair discriminatory practice must be brought as a civil action . . . within one year after the occurrence of the practice."  Minn. Stat. § 363A.28, subd. 3.  *See also Taxi Connection v. Dakota, Minnesota, & Eastern R.R. Corp.*, 513 F.3d 823, 825 (8th Cir. 2008).  The allegedly unfair discriminatory practice that is the subject of Jerome and Samatar's Complaint occurred during the abatement proceedings that culminated with the City Council's repair-or-raze resolution in December of 2012.  Jerome and Samatar did not press their MHRA claim until they filed this action in January of 2014, more than one year later.

Jerome and Samatar argue that their MHRA claim is nonetheless saved by the continuing violation doctrine, under which "each individual discriminatory act which is part of a continuing violation triggers anew the time period for reporting the entire pattern of discrimination, as long as at least one incident of discrimination occurred within the limitations period." *Id.* (quotations and citations omitted).  According to Jerome and Samatar, the city's actions have resulted in their "continuing inability . . . to utilize their property which continues every day" and which therefore amount to a continuing violation of the statute.

This is not persuasive.  In analyzing whether the MHRA's statute of limitations is tolled, "the court 'must distinguish between discriminatory acts and discriminatory effects; the proper focus is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts became most painful.' . . . The court must determine whether a present violation exists, rather than whether there are continuing effects from earlier . . . decisions." *Id.* (quoting *Sigurdson v. Isanti County*, 448 N.w.2d 62, 66 (Minn. 1989) and *Kohn v. City of Minneapolis Fire Dep't*, 583 N.W.2d 7, 11 (Minn. Ct. App. 1998)) (emphasis in original).  It is clear that the last of the city's allegedly discriminatory acts occurred in December of 2012; what Jerome and Samatar characterize as a continuing violation are merely the consequences of those actions. The continuing violation doctrine thus does not apply, and accordingly, Jerome and Samatar's MHRA claim is time-barred.

## Conclusion

Jerome and Samatar press four federal claims and one state claim against the city.  They are precluded from relitigating most of the factual allegations they make in support of those claims by the Minnesota Court of Appeals' decision.  The remaining factual content in the

Complaint is insufficient to state a claim on which relief may be granted, and the state claim is also time-barred.  The city's Motion to Dismiss is therefore granted.

Based on the files, records, and proceedings herein, and for the reasons discussed above,

IT IS ORDERED THAT:

1. Defendant's Motion to Dismiss [ECF No. 6] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 9, 2014                        s/Joan N. Ericksen
                                                JOAN N. ERICKSEN
                                                United States District Judge